Good morning, your honors. May I please the court? My name is Philip Barilovitz. I'm from the Deckert Law Firm. We represent the petitioners today, the Alvarez family, along with me is Kathy Wong from Reed Smith, who will be handling the rebuttal. On the brief and also present today is Valerie Wagner, also of the Deckert Law Firm. Yes, your honor. Thank you, your honor. Thank you, your honor. We also appreciate the opportunity to have the cases to argue in front of the court. Despite all of the cases and all of the arguments and sub-arguments in the briefs, the Alvarez's petition to this court really raises only one issue. And one request. And that is when the Board of Immigration Appeals denies a petition for a hardship exemption to U.S. citizen children under the exceptional, extremely unusual hardship standard, that it applies its own standards and it does so in a discernible way. All the case law and all the arguments simply come down to that one request. In this case, it is indisputable, but the immigration judge applied a standard, stated and applied a standard in his opinion, and that opinion was later affirmed by the Board of Immigration under the Bovano case, summarily. Applied a standard that was called extreme by the Board of Immigration Appeals itself. In addition, in the very precedent cited for that standard, the Board of Immigration Appeals in a series of cases in the early 2000s said that to require U.S. minor children to show the hardship to them would be unconscionable is too extreme of a standard. And the immigration judge in that opinion applied that very standard. And then cited the cases that actually say that that standard is actually too extreme. Now, the government argues in front of this Court that we cannot, the Alvarez's cannot bring this issue up, because we did not exhaust our administrative remedies. Quoting cases from the First Circuit, for example, the Silva case, the government argues that the Alvarez's informing the Board of Immigration Appeals in their brief that this, that the standard was actually, that the hardship to the issue. And as we pointed out in our briefs, that is contrary to the Ninth Circuit precedent on the requirement to show exhaustion. This Court has correctly recognized that the policy and the point of the exhaustion doctrine is simply to allow the Board of Immigration Appeals to pass on the issue and to correct its own mistake. We submit that if it's a standard, this is not a side issue, the standard, the test to be applied, is the very beginning, the cornerstone of the analysis that will follow. Even if the Alvarez's had not brought it up on appeal, and we don't, we're not arguing that, even if the Alvarez's did not state the correct standard in their brief to the BIA, this is such a black and white zero-one issue. It is the cornerstone for the analysis that followed. The Board of Immigration, in our view, should have picked up on this and realized that a mistake had been made. At the end of the day, the Alvarez's did tell the BIA in their brief on appeal that the standard was not that the children would have to suffer unconscionable hardship. Now, it is true, they could have gone on for pages and wrote an exegesis on the subject, but as we pointed out in our brief, this is not required. The simple requirement is that the BIA should be children. And just as a note here, whenever a hardship exemption is denied by the BIA in these situations, these horrible situations, where the children or the parents are applying on behalf of the hardship to their children, if the BIA denies that, it puts an awful choice in the family, the parents saying that is accepted as the fact of the case. As a general legal matter, in this case, for example, the choice is still not a good one. In every case, either the parents will be separated from the children if the children remain behind in the United States, or these children, for example, here, will be forced to leave the only home they've ever known. These, again, are teenagers who have grown up in the United States, and all we're requesting is that the BIA apply their own standard. Now ‑‑ I would say that the ‑‑ I would say yes, because the only error in the opinion was not simply the unconscionable. The only error in the opinion is a standard that would apply. Now, if the result is, as a result of the unconscionable standard at the beginning, the entire opinion is vacated, no, because we'd start from zero again. But if the BIA intends to use any part of that decision, the indiscernibility question would come up, because the analysis ‑‑ I agree, Your Honor. And actually, if it is remanded, it certainly would give it back to the BIA in the first instance to correct any indiscernibility questions. That is correct. Now, if ‑‑ obviously, if it went back to the BIA and the opinion was not corrected, it would be back up on appeal again, and that would be an issue in itself. I would encourage the Court, however, to look at the discernibility issue itself. In this regard, the indiscernibility question goes to the very heart of how this process is working, and I think it's important that the BIA and the BIA. As we said in our brief, in any other context, it would be almost probably unthinkable, if you were to receive a decision from the Federal Trade Commission or the SEC, where the judge or the administrative law judge gets to the legal analysis, the very heart of the decision, which this Court would look at, and there are so many bracketed indiscernibles, that it becomes a problem. I'd just like to point out on the exhaustion issue on indiscernibility. The government argues that we didn't bring this up. The Alvarezes didn't bring this up to the BIA. We concede that. However, we'd like to point out that this, as this Court said in the Rosinas de Leon case, that this raises a central issue of administrative law, and it raises a central issue of the requirement that this Court not second guess the agency's decision. At heart of that doctrine is a separation of powers issue. The government's arguments at its root is that a party can waive a right of the agency to make a decision, and that decision would be vested in this Court. Yes, Your Honor, I'd like to reserve the rest for rebuttal. Thank you. Good morning, Your Honors. My name is Julie Fluger. I'm here to represent the Department of Justice in this matter. The Court does not have jurisdiction to review the denial of petitioner's applications for cancellation of removal based on the discretionary finding that their removal to Mexico would not cause exceptional and extremely unusual hardship to their United States citizen children. Now, petitioners are often assert that the immigration judge didn't consider their educational needs, their medical needs, and their language abilities in coming to his decision. However, this isn't a colorable legal claim. This is merely a challenge to the discretionary denial of cancellation of removal, and this Court historically has found that you do not have jurisdiction over this discretionary decision, as well as the legislative history of the Immigration and Nationality Act supports this. In his decision, the immigration judge did not consider the availability of medication, the education that they're getting, the individual educational plan for the son, the daughter's education, and the stigma of stigmatism. And although the immigration judge was not required to do this, as petitioners state in their brief, the immigration judge did look at conditions in Mexico upon return. He did look at... I think you're correct in terms of our inability to generally review these discretionary decisions, so that's why I think those cases are arguable. But in this particular case, it wasn't as agreed by a separate challenge to the legal system as it is in this particular case. It was a standard that they would have jurisdiction to review, but if it was a wrong legal standard applied and the invocation of a questionability was a wrong legal standard, since that had been approved by neither the BIA or our Court, since it's certainly extra-statutory. Would you comment on the Department's view on that? Well, the Department's view is that the courts are now raising questions of law that have not been exhausted. Petitioners claim that the immigration judge used the incorrect interpretation of... That's correct, Your Honor. The petitioners did not raise this argument to the Board of Immigration Appeal. The entire premise behind it is to address errors and legal arguments before it comes in front of this Court. What petitioners did do is in their statement of legal facts, they had one sentence citing matter of Montreal, which is the case that says that unconscionability is not required. They have one sentence in their statement of legal facts saying that hardship needs to be substantially beyond that which would be deportation, but need not show such hardship would be unconscionable. Now... I'm sorry, Your Honor, I didn't... That was in their brief to the Board? I don't believe... No, Your Honor. As to my reading, as their brief to the Board of Immigration Appeal, their brief argued entirely that the discretionary determination was incorrect because they did show the hardship and that the immigration judge did not consider factors in the aggregate. They did not argue that there was an error of law in their brief to the Board of Immigration Appeal. The only reference they made was this one sentence in the brief. That's correct. It's in a... It's called statutory eligibility is what it's under. It's a section entitled statutory eligibility, and they have this sentence that says that you do not need to show unconscionability. However, this court has said that exhaustion, it needs to alert the Board of Immigration Appeals as to the issue so that they can resolve or correct errors, and that you cannot satisfy the exhaustion requirement merely by making a general challenge. Now, petitioners do cite all these cases saying that you do not need to elaborate. However, all of these cases are distinguishable from our present case. In all the cases that the Board of Immigration Appeals cite, the Board was given specific notice as to what the issue was. For example, in Kaganovich, the issue was whether the petitioner had entered as a refugee into the United States. And in a brief to the Board, the petitioners in Kaganovich specifically say the immigration judge erred in disregarding that the petitioner entered the U.S. as a refugee. Here they clearly identified the error of the immigration judge, said here is the error of law. And after that, this court held that there is an issue. In all of the cases, Moreno, Morante, Zhang, Lada, that's what the difference is. In all of those cases, the petitioners had alerted the Board that there is an issue. And then this court held you do not need to elaborate further. So in this case, there's nothing in their brief. I mean, they have an 11-page brief that is devoted entirely to saying we have shown exceptional and extremely unusual hardship. The immigration judge did not consider factors in the aggregate. They even, petitioners in their brief even cite matter of Montreal, which is the case that says you do not need to show unconscionability. They cite it not for that proposition, but they cite it for saying you need to look at the age, the health, the circumstances of qualifying relatives. They don't anywhere in the brief say we're citing matter of Montreal, saying that this is an issue. So by merely putting that in the statutory eligibility section, this does not alert the Board that there's an issue. The government would ---- Yes. What would you say are the most significant cases from the subpoena court for the 9th Circuit stating a standard as to when an issue is securely presented to the agency so that we would consider the result? Well, this court has ruled in the case of Zara v. Ashcroft that exhaustion is not satisfied by making a general challenge to the immigration judge's decision. And that is the case that we are relying on. I mean, we also did cite a First Circuit case, but in general, Zara v. Ashcroft also ---- I have other cases mentioned in my brief. I don't know if you've seen them, but I think I don't have them at hand right here. But all of the cases that petitioners have mentioned are clearly distinguishable in that, as I said, the issue was specifically brought up to the Board. And then after the issue is brought up, this court has held you don't need to elaborate on the argument further. The government would ask that if the court does find that there is jurisdiction that they have across this jurisdictional bar, that the case be remanded to the Board of Immigration Appeal so that the Board can determine these cases. Any further questions, Your Honor? Thank you, Your Honor. Okay. Thank you. Good morning, Your Honors. All that Ninth Circuit presidential cases require is that the agency has an opportunity to pass upon the issue. And the APIA here had ---- In Kaganovich v. Gonzales, all that the petitioner had one sentence in his notice of appeal. It said, Kaganovich, it said that the I.J. erred in disregarding that the petitioner entered into the United States as a refugee. It was the only sentence in his notice of appeal, and this court ruled that that was enough to have raised the issue before the BIA and to put them on notice that that was going to be an argument before the BIA. Here, the Alvarez's told the BIA the correct legal standard was that it need not be unconscionable, and that in comparison, side to side with the I.J.'s opinion, where the I.J. applied the same argument, the exact opposite standard, 180 degrees different from what the petitioners told the BIA was the correct standard in that brief, that was enough to put the BIA on notice and to give the BIA an opportunity to correct the I.J.'s legal error. Further, this is the central legal question in this analysis, in the hardship analysis, one that the BIA came up with four years ago itself, and one that the BIA applies on a daily basis. Because the BIA adopted and affirmed the I.J.'s opinion in a pro bono affirmance, that signifies to this court that the BIA conducted an independent review of the I.J.'s opinion, and it determined that it agreed with the I.J.'s conclusions in its entirety. It expressed no disagreement. Therefore, the BIA had an opportunity to pass on the issue, and failed to correct the I.J.'s error. That was submitted to the court, exhausted. This issue was raised in court, and the case to the BIA, and the exhaustion requirement has been met. Your Honors, there are two things that the petitioners asked for here. One, that the immigration judge apply the correct legal standard to their case. And two, that the decision be discernible enough to understand the I.J.'s reasoning. At the very heart of this case, two U.S. citizens children are going to have their lives affected by what this court determines. And at the very least, they are entitled to an opinion that is discernible. Any further questions? Thank you. Thank you very much.
judges: Tashima, McKeown, Gould